Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

```
UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
    VS.                          )        NO. CR 17-00557 MMC
                                 )
JEFFREY WERTKIN,                 )
                                 )
            Defendant.           )
_____ )
```

San Francisco, California
Wednesday, November 29, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                        BRIAN J. STRETCH
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                BY:  **ROBIN L. HARRIS**
                     **WILLIAM FRENTZEN**
                     **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant:
                        ARGUEDAS, CASSMAN & HEADLEY LLP
                        803 Hearst Avenue
                        Berkeley, California  94710
                BY:  **CRISTINA C. ARGUEDAS**
                     **RAPHAEL M. GOLDMAN**
                     **ATTORNEYS AT LAW**


Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

1    **Wednesday - November 29, 2017**                    **2:29 p.m.**

2                    **P R O C E E D I N G S**

3                         **---000---**

4         **THE CLERK:**  Calling Criminal Case Number 17-557,

5    United States of America versus Jeffrey Wertkin.

6         **MS. HARRIS:**  Good morning, Your Honor.  Robin Harris

7    and Will Frentzen for the United States.

8         **THE COURT:**  I wish it were still good morning as I

9    have a lot to do today, but in any event.

10        **MS. HARRIS:**  I'm sorry.

11        **MR. FRENTZEN:**  Good afternoon, Your Honor.

12        **MS. ARGUEDAS:**  Good afternoon, Your Honor.  Cris

13   Arguedas and Raphael Goldman for Jeffrey Wertkin, who's

14   present.

15        **MR. GOLDMAN:**  Good afternoon, Your Honor.

16        **THE COURT:**  Other than "good afternoon," did other

17   Government counsel get a chance to state his whole appearance

18   or not?  Did you?

19        **MR. FRENTZEN:**  Ms. Harris covered me, Your Honor, but

20   William Frentzen as well.

21        **THE COURT:**  All right.

22        **MR. FRENTZEN:**  Good to see you, Your Honor.

23        **THE COURT:**  Nice to see you, Mr. Frentzen.

24        Okay.  So, let's see here, this matter is on for initial

25   status and there was an Information that was filed and the case

```
 1   is in front of me on the Information.  I don't think I have

 2   any -- let me double check and see if I have any minutes from

 3   the magistrate judge or anyone else.

 4        I don't know.  Did he appear before the magistrate?

 5            MS. ARGUEDAS:  He did.

 6            MS. HARRIS:  This morning, Your Honor.  He was

 7   arraigned on the Information this morning, and now we're before

 8   you.

 9            THE COURT:  All right.  Thank you.

10        And did he waive, then, the Indictment?

11            MS. ARGUEDAS:  He did.

12            THE COURT:  Okay.

13            MS. ARGUEDAS:  And we're here for change of plea.

14            THE COURT:  Today?

15            MS. ARGUEDAS:  Today.

16            THE COURT:  Okay.  Now, let me double-check what I

17   have because I looked through -- here it is.

18        All right.  I have a courtesy copy that was provided to me

19   a little while ago, a day or two ago, and I have looked through

20   it.  Do you have a formal Plea Agreement today?

21            MS. HARRIS:  We do, Your Honor, and it's been signed

22   by the parties and counsel.

23            THE COURT:  All right.  Have there been any changes

24   since the time this courtesy copy was provided?

25            MS. HARRIS:  There have not.
```

1     **THE COURT:**  No?  Okay.  Let me just take a quick look.

2                         (Pause in proceedings.)

3     **THE COURT:**  All right.  Let's see, Ms. Harris, I see

4     your signature; Ms. Arguedas'; and I will confirm with

5     Mr. Wertkin that that's his in a minute or two.

6         If we're going to go forward, then, Mr. Wertkin, it will

7     be necessary that we swear you in as your answers to all the

8     questions I have to ask you should be under oath.  So I'm going

9     to ask you to raise your right hand at this time.

10                        (Defendant sworn.)

11    **THE DEFENDANT:**  I do.

12    **THE CLERK:**  Thank you.

13    **THE COURT:**  All right.  And what is your true full

14    name, sir?

15    **THE DEFENDANT:**  Jeffrey Adam Wertkin.

16    **THE COURT:**  All right.  Mr. Wertkin, I've been advised

17    that you are considering changing your plea to the three

18    charges that are in the Information that was filed against you;

19    is that correct?

20    **THE DEFENDANT:**  Yes, Your Honor.

21    **THE COURT:**  All right.  I'm required by law to go

22    through all manner of questions with you.  A lot of it may seem

23    duplicative because you appear to have answered some of them

24    already in the Plea Agreement, but the law does require me to

25    do this again in open court.

1       On the last page of a document titled "Plea Agreement"

2   there are a variety of signatures.   One of them is over the

3   line that says "Jeffrey Wertkin, Defendant."   Is that your

4   signature, sir?

5           **THE DEFENDANT:**  Yes.

6           **THE COURT:**  All right.   Before you signed the

7   Plea Agreement, did you read it over in full?

8           **THE DEFENDANT:**  Yes.

9           **THE COURT:**  Have you had enough time to discuss it

10  with your attorneys?

11          **THE DEFENDANT:**  Yes.

12          **THE COURT:**  All right.   Are you satisfied that you

13  understand everything in it?

14          **THE DEFENDANT:**  Yes.

15          **THE COURT:**  Okay.   Now, what the Plea Agreement says

16  is that you are considering changing your plea to Counts 1, 2,

17  and 3 of the Indictment.   Counts 1 and 2 each charge a felony

18  violation of Title 18 of the United States Code, Section 1505.

19  Count 3 charges a different violation, again a felony,

20  Title 18, Section 2314.

21      Each of those offenses has a set of elements that before

22  you could be convicted, if you decided to go to trial, the

23  Government would have to prove up.   The first two charges

24  allege obstruction of justice, and I'll go over the elements

25  with you.   I know you've confirmed you understand them.

1    They're not terribly complicated but, all right, just to be

2    sure.

3         All right.  First, there has to have been a proceeding

4    that -- well, there has to be a proceeding that is being

5    conducted by -- it could be any department or agency of the

6    United States, but something ongoing, pending, that you knew

7    about it, that you tried to influence or obstruct or impede

8    that proceeding, and that you did so corruptly.

9         Now, I'm not sure, Counsel, what that word encompasses in

10   this context.  Does anyone want to elaborate on that or not?

11         **MS. HARRIS:**  Which word, Your Honor?

12         **MS. ARGUEDAS:**  "Corruptly."

13         **THE COURT:**  "Corruptly."

14         **MS. HARRIS:**  Oh, they don't really define it in the

15   jury instructions.  It's just with willful intent.

16         **THE COURT:**  Okay.  So the intent, I gather, is

17   essentially you did it in order to change the outcome of the

18   proceeding and with intent to do that and not a proper one

19   would be about as close as we can get, I think, not a legal

20   intent.

21         All right.  Do you understand those are the elements?

22         **THE DEFENDANT:**  Yes.

23         **THE COURT:**  Okay.  Then the third count charges a

24   violation briefly described as interstate transportation of

25   stolen property, and the elements there are that you

1    transported stolen property between one state and another; that

2    at the time you crossed the line, the state line, you knew this

3    property was stolen; and that you intended to deprive the owner

4    of ownership of that stolen property either temporarily or

5    permanently.

6        Okay.  Do you understand those are the elements for the

7    Count 3?

8            **THE DEFENDANT:**  Yes.

9            **THE COURT:**  Okay.  Oh.  I'm sorry.  There's one more.

10       That the property -- and I'm not sure if this changes just

11   the penalty or it's an element -- the value of the property has

12   to be at least $5,000.

13           **MS. HARRIS:**  It's an element, Your Honor.

14           **THE COURT:**  Pardon?

15           **MS. HARRIS:**  It's an element.

16           **THE COURT:**  It's an actual element.  Okay.

17       So there are actually four elements, and you're aware of

18   that as well?

19           **THE DEFENDANT:**  Yes.

20           **THE COURT:**  Okay.  Sometimes the amounts of things

21   change the penalty but not actually whether somebody could be

22   convicted of the charge.

23       All right.  Now, the penalties -- and I'm not trying to

24   shake you up by describing these to you, but these are the

25   maximum penalties anybody could receive whether they pled

1   guilty, went to trial, or otherwise, for the offenses, and

2   these penalties could be run -- off the record.

3                    (Discussion held off the record.)

4          **THE COURT:**  Okay.  So the penalties could be run

5   consecutively; in other words, on top of each other.

6          So for Counts 1 and 2, each of them, the maximum prison

7   term is five years.  The maximum fine is $250,000.  Supervised

8   release, if someone were committed to prison and they got out,

9   they could be under supervision for a maximum of 3 years.

10  Restitution, that would be as determined if there was any

11  monetary loss.

12         Those are the maximums anyone can receive.  Of frankly

13  less significance, I'm sure, to you is a mandatory penalty of

14  $100.  This is a special assessment.  It has to be imposed

15  whether somebody can afford it or not.

16         So those are the statutory penalties, so to speak.  Do you

17  understand what they are for Counts 1 and 2?

18         **THE DEFENDANT:**  Yes.

19         **THE COURT:**  Okay.  Each one could bear those

20  penalties.

21         There are collateral consequences that could occur as

22  well.  If you're not a citizen, there's the potential of being

23  deported.  Were you born in the United States?

24         **THE DEFENDANT:**  Yes.

25         **THE COURT:**  Okay.  We won't maybe go through all that

1    then.

2          And then if there was property that was used in some way

3    to effectuate or in connection with the criminal violation, it

4    could be forfeited; in other words, seized by the Government.

5    Are you aware of that as well?

6              **THE DEFENDANT:**  Yes.

7              **THE COURT:**  Okay.  Count 3, there are higher maximums,

8    10 years prison; 250,000-dollar fine; again, the 3 years

9    maximum supervised release; restitution.  Those are all the

10   maximums.  And then the mandatory 100-dollar penalty

11   assessment.

12         And are you aware of that as well?

13             **THE DEFENDANT:**  Yes.

14             **THE COURT:**  Adding it up with not too complicated

15   math, the maximum and actually mandatory penalty assessments

16   will total $300.

17         Okay.  There's also -- well, I don't think that applies

18   here either because if you are a citizen, you're not facing

19   deportation.

20         The forfeiture could apply again.

21         All right.  I'll leave the facts for a minute before we

22   get to that, and I want to go over to your rights.  The facts

23   are pretty lengthy, but I want to make sure you are aware of

24   your rights first.

25         You do have a right to have a trial on all these charges

1    and to have a trial by a jury.  You can't be convicted of any

2    of them under those circumstances unless all 12 jurors are

3    satisfied your guilt was proved beyond a reasonable doubt.

4    That's the Government's burden.

5         At the trial you would have a right to see, hear, and

6    question all the witnesses against you, see all the evidence

7    against you.  You could testify if you wanted to, but you can't

8    be forced to.  You have a right to remain silent and if you

9    decide not to testify, it couldn't be used against you in any

10   way.  It can't even be commented upon in any way.

11        You have a right to call your own witnesses and present

12   your own evidence and to have the Court issue subpoenas to

13   those witnesses and whoever has the evidence so that both the

14   witnesses and evidence would be here in court.

15        You have a right to counsel at all stages of the

16   proceedings.

17        I'm assuming that you are retained here, counsel are

18   retained?

19             **MS. ARGUEDAS:**  Right.

20             **THE COURT:**  All right.  But if you couldn't afford

21   counsel, counsel would be appointed for you at no cost to

22   yourself.  You have a right against self-incrimination.

23   Pleading guilty is self-incriminating.

24        If you went to trial, you could perhaps raise some kind of

25   affirmative defense, perhaps not challenging the charges but

1   coming forward with some other defense, such as the statute of

2   limitations has run, they waited too long, or something like

3   that.  There could be Fifth Amendment violations that you would

4   seek to keep out of evidence, statements you may have made,

5   Fourth Amendment violations, keeping out the evidence, physical

6   evidence that may not have been seized properly.

7        You would also have a right to any further discovery that

8   the Government might have that they haven't given you already

9   and could develop later.

10       And if you plead guilty, you give up all those rights.  Do

11   you understand that?

12            **THE DEFENDANT:**  Yes.

13        **THE COURT:**  You won't give up your right to counsel,

14   but they will not be representing you in the context of a

15   trial.  It would be in the context of the plea and any

16   sentencing proceedings.

17        By this Plea Agreement, you're giving up your right to

18   appeal.  Ordinarily if you went to trial and you had the

19   misfortune of being convicted, you could appeal; and, again,

20   would have a right to counsel through that appeal and, again,

21   to appointed counsel if you couldn't afford counsel.

22        There's also a right to what's called a collateral attack.

23   Sometimes people call it a petition for writ of *habeas corpus*.

24   It's not a direct appeal.  And in this instance you're giving

25   that right up also except if you could show that you received

1  ineffective assistance of counsel.

2      I have to say, with the attorneys you have, that is a

3  highly unlikely outcome.

4      All right.  Just so you're aware, you understand you're

5  giving up these other rights and to the extent that I've

6  described?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Okay.  I can't take a plea from someone

9  just because they're nervous or worried about what might

10  happen.  There have to be facts to support the plea.

11      You have set out a very lengthy statement of facts that

12  starts in item 2 on page 3 of your Plea Agreement and continues

13  on actually all the way through the middle of page 5.  So

14  there's a lot that you've stated there.  It's all very

15  detailed.  If these statements are true, they do form a factual

16  basis for the plea to each of the violations.

17      You've told me that you have read the Plea Agreement in

18  full; correct?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And you're fully aware of all the facts

21  that are set out in that section?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Are all those facts as are set

24  forth in Section 2 true and correct in all respects?

25          THE DEFENDANT:  Yes.

1          **THE COURT:**   Okay.   Have you talked about the

2     Sentencing Guidelines with your attorneys?

3          **THE DEFENDANT:**   Yes.

4          **THE COURT:**   Did they show you that page with the boxes

5     on it?

6          **THE DEFENDANT:**   Yes.

7          **THE COURT:**   Okay.   It used to be that the Court had to

8     figure out what box somebody fell into, and then actually

9     impose the sentence that was set forth in the box, with very

10    rare exception, that was acknowledged as part of the

11    guidelines.

12        In this day and age, those guidelines are no longer

13    mandatory, they're advisory, but the Court still has to make

14    that calculation and look at what box somebody falls into.

15        At that point under your Plea Agreement, although you

16    can't ask for one of those limited guideline departures, you

17    can ask for what's called a variance, which means that the

18    Court can look at all kinds of factors that are contained in

19    Title 18, Section 3551, in deciding what's an appropriate

20    sentence, which could be below or above, frankly, the guideline

21    range.

22        The Government is making a commitment, however, that they

23    will not ask for a sentence that is outside of the box that the

24    Court calculates if the Court uses an Offense Level of 19 --

25    that's on the vertical axis on that page you looked at -- along

with whatever Criminal History Category the Court finds that

you fall into, which frankly is probably I.  All right, that's

the top.

     Okay.  That goes from -- and I don't remember if I wrote

it down -- oh, 30 to 37 months.  That's the box.  So if, in

fact, the Court decides to use 19 and I, for example, your

maximum exposure on, let's say -- well, it might not be 30 to

37.  I'm not sure how it works out now.  I don't want to

actually commit to that because there are three violations; but

if it all came out to 19 and I, I think that's the box that's

the starting point.

          **MS. ARGUEDAS:**  That's what we think.

          **THE COURT:**  Okay.

          **MS. ARGUEDAS:**  That's what both sides think.

          **THE COURT:**  I can't promise you that at the moment.

And, in fact, I could actually choose a different Offense Level

if I thought for some reason that counsel hadn't add it up

right.  That's not likely to happen, but it's possible; and if

I do that, you won't be able to change your plea, but I think

Ms. Harris is still limited to the 30 to 37, and you can go

wherever you want with it.

     Okay.  There's also what they're calling the special

search condition.  That condition has almost become the regular

search condition and the old regular one has become the special

one.  Essentially it means that while you're on supervised

1   release, anything under your control -- it can be your house,

2   your car, some property you're walking around with -- is

3   subject to a search by any kind of law enforcement officer or

4   probation officer, federal, state, local, Fish & Game I

5   guess -- I'm not sure -- without having what might be

6   considered probable cause or even a somewhat lesser standard,

7   legally cognizable of reasonable suspicion.  They probably

8   can't just try and make your life miserable, but if they had,

9   like, a good hunch as an experienced officer, they could act on

10  it even though if you weren't on supervised release.  Maybe

11  they couldn't.

12      You're agreeing in this Plea Agreement to make full

13  restitution if there is any.

14      You're going to withdraw from the bar according to this.

15  That's a major commitment.

16      Okay.  Let me ask, first of all, do you understand --

17  well, I've tried to kind of summarize the highlights of the

18  Plea Agreement that bear on sentencing.  I didn't touch on all

19  of them perhaps, but do you understand at least the ones I've

20  described?

21          **THE DEFENDANT:**  Yes, Your Honor.

22          **THE COURT:**  And do counsel understand those to be any

23  different?  In other words, did I say something different than

24  what you understand the parties have agreed to?

25          **MS. ARGUEDAS:**  It's correct.

1          **THE COURT:**  All right.  Let me ask, then, whether

2     there are any other conditions that you would like me to take

3     up that are contained in the Plea Agreement or anything

4     generally I may have, I don't know, overlooked in not following

5     the script, so to speak.

6          **MS. HARRIS:**  Your Honor, also at paragraph 13 of the

7     Plea Agreement the defendant is agreeing that after he pleads

8     guilty and before sentencing, he will meet with representatives

9     of the United States Government, including the Civil Frauds

10    Division and the U.S. Attorney's Office, in order to provide

11    information to the Government that might help mitigate the

12    damages that he caused by the conduct.

13         **THE COURT:**  Okay.  And do you understand that as well,

14    sir?  That is in paragraph 13.

15         **THE DEFENDANT:**  (Nods head.)

16         **THE COURT:**  I don't want to know -- oh, I'm sorry.  He

17    did say "yes" but he's sort of mouthing it.  It's very quiet.

18       All right.  It was more in a nod.

19         **MS. ARGUEDAS:**  Okay.  Good.

20         **THE COURT:**  Because the reporter can't take down

21    gestures.  They have to take down words.

22       I don't want to know the private conversations you've had

23    with your attorneys, but if you could just answer the next

24    question yes or no.  Have you had enough time to discuss this

25    case with your attorneys?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  And if you'll use those same two choices

3    for the next question.  Have you had enough time to discuss

4    with them any possible defenses that you might have to the

5    charges?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right.  Has anyone threatened you in

8    any way to encourage you to change your plea?

9              THE DEFENDANT:  No.

10             THE COURT:  Has anyone made any promises to you other

11   than those contained in the Plea Agreement?

12             THE DEFENDANT:  No promises.

13             THE COURT:  Okay.  Is there anything you want to ask

14   me other than what I'm going to do?  Because I don't know the

15   answer to that anyway.

16             THE DEFENDANT:  No questions.

17             THE COURT:  All right.  Counsel, is there anything

18   that you would like me to take up with the defendant before I

19   turn to the Information?

20             MS. HARRIS:  Your Honor, I think you adequately

21   advised the defendant that he's waived his right to appeal

22   except in those very limited circumstances.

23             THE COURT:  Yes.  Ordinarily we talked about you could

24   appeal, but this Plea Agreement by entering into it, you give

25   that up; and he's nodding yes.

1        **THE DEFENDANT:**  I understand.

2        **THE COURT:**  And then also that ordinarily you would

3   have a full range of grounds on which to raise a collateral

4   challenge, and here only on ineffective assistance you've

5   indicated; correct?

6        **THE DEFENDANT:**  I understand.

7        **THE COURT:**  Okay.  The counts -- and I just want to

8   see how best to describe these.

9                  (Pause in proceedings.)

10       **THE COURT:**  Let me ask counsel.  Do I need to read all

11  the language in each of the counts or just confirm that the

12  defendant has read the Indictment and if he does enter a plea,

13  it's to the charges as set forth -- read the Information and if

14  there is a plea, it's to the charges set forth?

15       **MS. HARRIS:**  I don't think you need to read all of

16  this.  The defendant was arraigned on the Information today and

17  confirmed that he understood it; and you can ask him that, I

18  guess, now under oath, and then we could move forward.

19       **MS. ARGUEDAS:**  I agree.

20       **THE COURT:**  Ms. Arguedas, you're in agreement?

21      All right.  Sir, just to confirm, however, there's a

22  document called an Information.  Ordinarily you'd have a right

23  to have these charges brought by Indictment.  In other words,

24  you couldn't really face the charges unless a Grand Jury had

25  decided there was enough evidence to require you to go forward.

1    I've been advised you gave up the right to have an Indictment

2    and are proceeding on the Information.   Is that correct?

3             **THE DEFENDANT:**  Yes, Your Honor.

4             **THE COURT:**  And have you read over the Information in

5    full?

6             **THE DEFENDANT:**  Yes.

7             **THE COURT:**  And are you satisfied you understand it

8    fully?

9             **THE DEFENDANT:**  Yes.

10            **THE COURT:**  And have you had enough time to discuss

11   those charges with your counsel?

12            **THE DEFENDANT:**  Yes.

13            **THE COURT:**  All right.  I'm going to turn to Count 1.

14       All right.  Okay.  Jeffrey Wertkin, you are charged in

15   Count 1 with a violation of Title 18 of the United States Code,

16   Section 1505, briefly described as obstruction of justice.  To

17   that charge as fully set out in Count 1, what is your plea,

18   sir?

19            **THE DEFENDANT:**  Guilty.

20            **THE COURT:**  In Count 2, likewise, you are charged with

21   a violation of Title 18 of the United States Code,

22   Section 1505, obstruction of justice.  To that charge as fully

23   set out in Count 2, what is your plea?

24            **THE DEFENDANT:**  Guilty.

25            **THE COURT:**  In Count 3 you are charged with a

 1    violation of Title 18 of the United States Code, Section 2314,

 2    briefly described as interstate transportation of stolen goods.

 3    To that charge as fully set out in Count 3, what is your plea?

 4              **THE DEFENDANT:**  Guilty.

 5              **THE COURT:**  All right.  I will accept the guilty

 6    pleas.  It's clear this was not a series of pleas entered

 7    lightly or without adequate information, and I'm satisfied that

 8    the defendant has been fully advised of his rights.  He has

 9    knowingly and voluntarily given them up.  He is represented by

10    very able and experienced counsel.  So I'm going to accept the

11    pleas.

12         And I want to give the Plea Agreement, the official copy,

13    back to the clerk to be filed.  Now, I do find that he signed

14    that agreement freely and voluntarily, he fully understands its

15    content as well.

16         So, Ms. Geiger, thank you.

17              **THE CLERK:**  Thank you.

18              **THE COURT:**  All right.  Now, we need to put the matter

19    over until some date.  Have you agreed on a date by any chance?

20              **MS. ARGUEDAS:**  If it's all right with the Court, we

21    all want March 14th.

22              **THE COURT:**  March 14th.

23              **MS. HARRIS:**  That's correct, Your Honor.

24              **THE COURT:**  I guess that's all right.

25         All right.  So the matter will stand over to March 14 at

```
1    2:15, and the defendant is ordered to be here personally.  So,

2    Mr. Wertkin, you're ordered to be here personally on March 14

3    at 2:15 in the afternoon.  That will be for judgment and

4    sentencing.

5         In between, now, the probation officer is going to prepare

6    a report.  I'm sure your counsel have advised you of this

7    already.  You'll have a chance to meet with them, speak with

8    them with your attorneys present if that's what you wish, and

9    that you will actually see the report before I do and have a

10   chance to ask them to make changes if you feel it's not

11   accurate before I see it, and then everyone will be back here

12   in several months.

13        I will see you all then.  Thank you.

14             ALL:  Thank you, Your Honor.

15             THE COURT:  Thank you.

16                  (Proceedings adjourned at 2:56 p.m.)

17                            ---oOo---

18

19

20

21

22

23

24

25
```

1

2

3                    **CERTIFICATE OF REPORTER**

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Friday, December 8, 2017

8

9

10

11    _____

12           Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                      U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25